## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN HENRY CISTRUNK, #207830,

        Petitioner,

                                      CASE NO. 2:12-CV-12568

v.                                  HONORABLE PAUL D. BORMAN

SHERMAN CAMPBELL,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR A WRIT OF HABEAS CORPUS,
## DENYING A CERTIFICATE OF APPEALABILITY, AND
## DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

      This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan

prisoner John Henry Cistrunk ("Petitioner"), currently confined at the Gus

Harrison Correctional Facility in Adrian, Michigan, was convicted of assault with

intent to commit murder, MICH. COMP. LAWS § 750.83, assault with intent to

commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84, felon in

possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a

firearm during the commission of a felony, second offense, MICH. COMP. LAWS

§ 750.227b, following a jury trial in the Wayne County Circuit Court. He was

sentenced, as a third habitual offender, MICH. COMP. LAWS § 769.11, to 26 to 40

years imprisonment on the assault with intent to commit murder conviction, a concurrent term of 5 to 15 years imprisonment on the assault with intent to commit great bodily harm conviction, a concurrent term of 2½ to 5 years imprisonment on the felon in possession conviction, and a consecutive term of 5 years imprisonment on the felony firearm conviction in 2009.

In his habeas petition, as amended, Petitioner raises claims concerning the impartiality of the trial judge, the conduct of the prosecutor and the effectiveness of trial counsel regarding the admission of other acts evidence, the jury instructions, the accuracy of sentencing information, the scoring of the sentencing guidelines and the effectiveness of trial counsel at sentencing, double jeopardy as to his felon in possession and felony firearm convictions, the identification procedures and the effectiveness of trial counsel as to that issue, the police investigation, the conduct of the prosecutor, his right to testify and the waiver of that right, the sufficiency of the evidence, and the effectiveness of trial and appellate counsel. For the reasons set forth herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## II. <u>Facts and Procedural History</u>

Petitioner's convictions arise from the non-fatal shooting of two people in a residential area in Detroit, Michigan in 2008. The Michigan Court of Appeals

described the relevant facts, which are presumed correct on habeas review, 28

U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as

follows:

> Defendant's convictions arose from the shooting of Martin Paris and Nathaniel Floyd on the evening of October 22, 2008. Paris testified that defendant drove up to the home of Paris's sister, Antoinetta Gibson, that evening in an orange-and-black Dodge Charger looking for Gibson. Floyd, Paris's friend, then appeared at the home, and Paris and Floyd got in a vehicle to leave for some food. Defendant, who had driven away, returned in the Charger and kept asking for Gibson. He then shot toward Paris and Floyd. Paris was hit in the neck and arm. Floyd testified that he, too, was shot in the neck by defendant. Kevin Anderson testified that he was visiting the area in question that night, that he heard several gunshots, and that he saw a Charger in the area. Gibson testified that before the shooting incident she had had a friendship with defendant and had seen him seven or eight times. Todd Eby, a sergeant with the Detroit Police Department, testified that he prepared a photographic lineup for Paris and Floyd and that they both identified defendant as the shooter.

> Defendant's brother, Henry Brown, testified that he was with defendant at defendant's home during the entire day of October 22, 2008. Gino Rucker and Sean Clark, two of defendant's friends, testified that defendant was at home taking part in a drug intervention for Brown at the time of the offenses. Samuel Williams, Jr., also testified that defendant was home during the pertinent time. Abdul Kerek, the owner of an automobile-body shop, testified that defendant's Dodge Charger was towed to his shop in October 2008. He stated that he could not remember the exact date the car was brought it but he was "[a h]undred percent sure" that it was taken by the police three days after it was brought in. Earlier, Eby had testified that the police department retrieved the car from Kerek's shop on October 24, 2008. Timothy Jackson, a tow-truck driver, testified that he towed defendant's car to Kerek's shop on October 21, 2008. Jamie Douglas, defendant's girlfriend, testified that defendant's Charger was "in the shop" at the time of the offenses. She also testified that

defendant was home on the evening in question.

*People v. Cistrunk*, No. 291862, 2010 WL 2836349, *1 (Mich. Ct. App. July 20, 2010) (unpublished).

Following his convictions and sentencing, Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals raising claims concerning the impartiality of the trial court, the conduct of the prosecutor and the effectiveness of trial counsel as to the admission of other acts evidence, and double jeopardy with respect to his felon in possession and felony firearm convictions. Petitioner also filed a pro per supplemental brief. The court denied relief on the claims raised by counsel, rejected the supplemental brief as inadequate, and affirmed Petitioner's convictions and sentences. *Id*. at *1-4. Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same three claims raised by counsel, as well as claims concerning the jury instructions and the validity of his sentence. The court denied leave to appeal in a standard order. *People v. Cistrunk*, 488 Mich. 1048, 794 N.W.2d 603 (2011).

Petitioner thereafter filed his initial federal habeas petition raising the five claims presented to the Michigan Supreme Court on direct appeal, as well as a motion to stay the proceedings so that he could return to the state courts to exhaust additional claims. The Court granted that motion and stayed the proceedings. Petitioner then returned to the state courts and ultimately filed a motion for relief

from judgment with the state trial court raising claims concerning the identification procedures and the effectiveness of trial counsel as to that issue, the police investigation, the conduct of the prosecutor, his right to testify and the waiver of that right, the sufficiency of the evidence, the effectiveness of trial and appellate counsel, and the validity of his sentence. The trial court denied relief on those claims pursuant to Michigan Court Rule 6.508(D)(2) and (3) and, in part, on the merits. *People v. Cistrunk*, No. 08-18426-01 (Wayne Co. Cir. Ct. Jan. 10, 2014). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Cistrunk*, No. 322827 (Mich. Ct. App. Nov. 7, 2014). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Cistrunk*, 499 Mich. 966, 880 N.W.2d 543 (2016).

Petitioner thereafter moved to reopen this case and proceed on an amended habeas petition. The Court granted that motion and reopened the case. Respondent subsequently filed an answer to the habeas petition, as amended, contending that it should be denied because certain claims are time-barred, certain claims are procedurally defaulted or abandoned, and all of the claims lack merit.

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim--
>
> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of

§ 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what

arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a

state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this

presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Analysis

### A.    Timeliness & Procedural Default

As an initial matter, Respondent contends that two of Petitioner's habeas claims are untimely and several of his habeas claims are barred by procedural default.  The Court declines to address these procedural defenses.  They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehab.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations).  Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.

Such is the case here.  The procedural issues are complex and intertwined with the substantive claims, particularly the effectiveness of trial and appellate

counsel claims, such that the substantive claims are more readily decided on the merits. Accordingly, the Court shall proceed to the merits of Petitioner's habeas claims.

**B.** **Merits**

**1.** **Judicial Bias (Habeas Claim I)**

Petitioner first asserts that he is entitled to habeas relief because the trial judge improperly questioned witnesses Kerek and Jackson and thereby exhibited bias against him. Respondent contends that this claim lacks merit.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims involve two types of cases. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002).

Adverse rulings themselves are not sufficient to establish bias or prejudice. *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006) (citing *Liteky*). A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment." *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008). In reviewing a judicial bias claim, a federal habeas court should presume that the trial judge properly discharged his or her official duties. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

The Michigan Court of Appeals denied relief on this claim ruling that the trial judge's questioning of the witnesses was permissible under Michigan law and that the trial judge acted fairly and provided appropriate cautionary instructions to the jury. The court explained in part:

> MRE 614(b) states that a trial court "may interrogate witnesses, whether called by itself or by a party."
>
> The trial court may question witnesses in order to clarify testimony or elicit additional relevant information.... However, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial.
>
> ***
>
> We have reviewed the trial court's questioning and find no evidence of partiality and no basis for reversal. It is apparent that the trial court was simply trying to elicit more information to aid the jurors in ascertaining the truth. For example, the court's request to Kerek for the telephone number of the tow-truck driver evidences the court's

12

attempt to have all pertinent witnesses testify regarding the location of the Dodge Charger on the date in question. The questioning in this case simply does not compare to the trial court's leading, derogatory, and inappropriate questioning in *Sterling, id.* at 229–231, 397 N.W.2d 182. Moreover, the trial court gave the following instruction to the jurors:

> My comments, rulings, questions and instructions are ... not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case.
>
> However when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about this case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion.
>
> You are the only judges of the facts and you should decide this case from the evidence.

This instruction clarified the court's role for the jury. "[J]urors are presumed to follow their instructions." *People v. Graves*, 458 Mich. 476, 486, 581 N.W.2d 229 (1998). We find that no error occurred with regard to the trial court's questioning and that reversal is unwarranted.

*Cistrunk*, 2010 WL 2836349 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record reveals that the trial judge primarily questioned Kerek about records that would show when Petitioner's car was towed to his shop by Jackson's towing company and when it was taken from his shop by the police. *See* 3/11/09 Trial Tr., pp. 50-60. The trial court questioned Jackson about when he moved into his shop and the

phone number as a follow-up to Kerek's testimony. *Id.* at pp. 83-86. Such

questioning was permissible under Michigan law, was intended to elicit additional

information to help the jury decide the case, and did not reflect favoritism toward

the prosecution nor antagonism against Petitioner or his defense. Petitioner fails

to establish that the trial judge was biased against him or that the judge's conduct

deprived him of a fair trial.

Moreover, any potential prejudice to Petitioner arising from the trial judge's

questions was mitigated by the court's instructions to the jury concerning their

respective roles at trial and the proper consideration of the evidence. Jurors are

presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782,

799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States

v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as

charged, and they are expected to follow it."). Habeas relief is not warranted on

this claim.

>         2.      <u>Conduct of the Prosecutor, Effectiveness of Trial Counsel,
>                 & the Admission of Other Acts Evidence (Habeas Claim II)</u>

Petitioner next asserts that he is entitled to habeas relief because the

prosecutor engaged in misconduct by eliciting testimony that Petitioner stripped a

furnace from an abandoned house and trial counsel was ineffective for failing to

object to that testimony. As explained by the Michigan Court of Appeals,

Petitioner objects to the following colloquy between the prosecutor and Nathaniel

Floyd:

> Q. Okay. Did you ask this gentleman not to shoot you?
> A. Yeah.
> Q. Okay. Did you know this gentleman?
> A. No. But I seen him earlier that day.
> Q. You seen him earlier on that day?
> A. Yep.
> Q. Did you have any encounter with him?
> A. No. He was next door snatching a furnace up.
> Q. Okay. And when you say "next door" was he at the—at the—Ms. Scott's next door to—
> A. No, the abandoned house.
> Q. Okay. The abandoned house.
>                  * * *
> Q. Okay. Were you aware that Martin had had any conversation with Mr. Cistrunk?
> A. None.
> Q. As far as you knew, there was no problem, other than he's stripping the house next door to you?
> A. Yeah, and I'm concerned.
> Q. Okay. You were concerned about that, but you didn't say anything; did you?
> A. Uh-uh, I let him do his thing.

*Cistrunk*, 2010 WL 2836349 at *3.  Respondent contends that this claim is barred

by procedural default and that it lacks merit.

The United States Supreme Court has made clear that prosecutors must

"refrain from improper methods calculated to produce a wrongful conviction."

*Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of

prosecutorial misconduct, a habeas petitioner must demonstrate that the

prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

That being said, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim essentially finding that the evidence was properly admitted for the purpose of explaining Floyd's familiarity with Petitioner, whom he did not previously know, and

establishing Petitioner's identity as the perpetrator of the crime. The court also noted that any prejudicial effect was lessened by the dissimilar nature of the prior act to the charged offenses. *Cistrunk*, 2010 WL 2836349 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner cannot establish that the prosecutor engaged in misconduct because, as explained by the Michigan Court of Appeals, the evidence was properly admitted under Michigan law as relevant regarding the credibility of Floyd's testimony and for the purpose of establishing Petitioner's identity. *See* MICH. R. EVID. 404(b). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the admission of the other acts evidence violated due process or rendered his trial fundamentally unfair. As to the admission of other acts evidence, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission

violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decision can be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner fails to state a claim upon which habeas relief may be granted as to such an issue.

Moreover, even if Petitioner states a cognizable claim as to the other acts evidence and/or the Court considers the issue in the context of alleged prosecutorial misconduct, Petitioner is not entitled to relief. He fails to show that the admission of the other acts evidence rendered his trial fundamentally unfair. The other acts evidence was relevant to show Floyd's familiarity with Petitioner and was admissible as to the issue of Petitioner's identity. The prosecution argued as much at trial. Identity is a permissible use of other acts evidence under both state and federal law. *See* MICH. R. EVID. 404(b); FED. R. EVID. 404(b). Petitioner fails to show that the admission of the other acts evidence was erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to object

to the admission of the other acts evidence.  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals denied relief on this claim finding that because the evidence was admissible under Michigan Rule of Evidence 404(b), Petitioner failed to show that trial counsel's conduct "fell below professional norms, affected the outcome of the case, or rendered the proceeding unfair or unreliable." *Cistrunk*, 2010 WL 2836349 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' decision and this Court's decision that the evidence was properly admitted under state law and did not render the trial fundamentally unfair, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Habeas relief is not warranted on this claim.

### 3. <u>Jury Instructions (Habeas Claims III & XI)</u>

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in instructing the jury. Respondent contends that habeas claim XI is untimely, and that the claims are procedurally defaulted and/or lack merit. The state courts did not address the merits of these issues on direct appeal or collateral review. Accordingly, the Court's review is de novo.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle*, 502 U.S. at

72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury applied the instruction improperly.  *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).  A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).  The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson*, 431 U.S. at 155.  State law instructional errors rarely form the basis for federal habeas relief.  *Estelle*, 502 U.S. at 71-72.

Petitioner first asserts that the trial court erred in instructing the jury on assault with intent to murder and assault with intent to commit great bodily harm less than murder.  He argues that the instructions were confusing and resulted in convictions that violate double jeopardy.  He seems to believe that because the jury convicted him of assault with intent to murder as to one victim without finding him guilty of the lesser included offense of assault with intent to commit

great bodily harm as to that victim some type of double jeopardy violation occurred.

Petitioner's claim lacks merit. First, to the extent that he asserts that the instructions were incorrect under Michigan law, he merely presents a state law claim which is not cognizable on federal habeas review. *Estelle*, 502 U.S. at 62. Second, his claim is belied by the record and he fails to show that the instructions, as given, violated state law or federal due process. The record reveals that the trial court properly instructed the jurors on the elements of assault with intent to murder, the lesser included offense of assault with intent to commit great bodily harm less than murder, and the lesser included offense of felonious assault as to each victim and instructed the jurors that they could find Petitioner guilty of one of those three offenses as to each victim, or find him not guilty as to each victim. *See* 3/11/09 Trial Tr., pp. 160-63. The jury subsequently convicted Petitioner of assault with intent to commit murder as to one victim and assault with intent to commit great bodily harm less than murder as to the other victim. *See* 3/12/09 Trial Tr., pp. 7-8. The jury instructions were appropriate and did not result in a double jeopardy violation or otherwise render the trial fundamentally unfair.

Petitioner next asserts that the trial court failed to instruct the jury on specific intent as to the assault with intent to commit murder and assault with intent to commit great bodily harm less than murder charges, on missing evidence,

and on his alibi and actual innocence defense.  These claims lack merit.  First, to
the extent that Petitioner asserts that the jury instructions were incorrect under
Michigan law, he again merely alleges state law claims which are not cognizable
on federal habeas review.  *Estelle*, 502 U.S. at 62.

Second, Petitioner fails to show that a separate specific intent instruction
was required under state law or as a matter of federal due process.  To be sure, the
record indicates that the trial court instructed the jury on the elements of assault
with intent to commit murder and assault with intent to commit great bodily harm
less than murder, which require respective findings that the defendant intended to
kill the victim or intended to inflict great bodily harm upon the victim in order to
sustain those convictions.  The court also instructed the jury that the prosecution
had to prove that the defendant committed the crimes and that he meant to do so.
*See* 3/11/09 Trial Tr. Pp. 150-52.  Consequently the jury could not have convicted
Petitioner of the offenses without finding that he had the requisite specific intent.
Petitioner fails to establish that the lack of a separate specific intent instruction
was erroneous or that it rendered his trial fundamentally unfair.

Third, Petitioner fails to show that a missing evidence instruction was
required under state law or necessary to satisfy federal due process.  Under
Michigan law, a trial court may instruct a jury that it may infer that missing
evidence would have been favorable to the defendant.  *See, e.g., People v. Davis*,

199 Mich. App. 502, 514-15, 503 N.W.2d 457 (1993), *overruled on other grounds by People v. Grissom*, 492 Mich. 296, 821 N.W.2d 50 (2012). Such an instruction is only warranted when the defendant demonstrates that the prosecutor or police acted in bad faith in failing to produce the evidence. *Id*. at 515. The defendant has the burden of demonstrating bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Petitioner makes no such showing. Conclusory allegations, without evidentiary support, are insufficient to justify habeas relief. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).

Fourth, Petitioner's claim that the trial court failed to instruct the jury on his defense of alibi and actual innocence is belied by the record. While the trial court did not use the word "alibi," it instructed the jury that Petitioner presented evidence that he was somewhere else when the crime occurred and that the prosecution had to prove beyond a reasonable doubt that he was present when the crime was committed. *See* 3/11/09 Trial Tr., p. 156. Petitioner fails to show that a state law error occurred, let alone one of constitutional dimension, as to this issue. In sum, Petitioner fails to establish that the jury instructions rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

Petitioner relatedly asserts that trial counsel was ineffective for failing to object to the jury instructions and/or request the additional instructions. Given the Court's decision that the jury instructions were appropriate under state law and did not render the trial fundamentally unfair, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct as required under *Strickland, supra*. As noted, trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or request. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Habeas relief is not warranted on this claim.

## 4. Sentencing & Effectiveness of Trial Counsel (Habeas Claims IV & XIII)

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in sentencing him. In particular, he alleges that the trial court relied upon inaccurate information in imposing his sentences and erred in scoring the state sentencing guidelines. He relatedly alleges that trial counsel was ineffective at sentencing. Respondent contends that these claims are procedurally defaulted, not cognizable, and/or lack merit.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not cognizable upon habeas review

26

unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums for his offenses and his status as a third habitual offender. *See* MICH. COMP. LAWS §§ 750.750.83, 750.84, 750.224f, 750.227b, 769.11. Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

Petitioner first asserts that the trial court relied upon inaccurate information in imposing his sentences. In particular, he contests the extent of one victim's injuries. The state courts did not address the merits of this issue on direct appeal or collateral review. Accordingly, the Court's review is de novo.

A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992).

Petitioner makes no such showing.  Rather, the record shows that he had a sentencing hearing before the state trial court with an opportunity to challenge the sentencing information.  He also had the chance to challenge his sentences on direct appeal and collateral review in the state courts.  Petitioner fails to establish that the state trial court relied upon materially false or inaccurate information in imposing his sentences which he had no opportunity to correct.  Habeas relief is not warranted on this clam.

Petitioner asserts that the trial court erred in scoring the state sentencing guidelines, including Offense Variables ("OV") 3, 6, and 12 and Prior Record Variables ("PRV") 2 and 7.[1]  The state trial court considered this issue on collateral review and denied relief finding that OV 3 was correctly scored and that the other issues were untimely.  *Cistrunk*, No. 08-18426-01 at *5-6.

The state court's denial of relief as to OV 3 is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts and Petitioner is not entitled to relief as to the other variables under a de novo standard of review.  Petitioner's claim that the trial court erred in scoring the offense

---

[1]Petitioner also seems to assert that his sentences were improperly scored as Class A offenses because his assault with intent to commit great bodily harm less than murder conviction is only a Class D offense.  His assault with intent to commit murder conviction is a Class A offense, *see* MICH. COMP. LAWS § 777.16d, however, and the trial court was required to score the guidelines according to the highest class offense for his convictions.  *See People v. Mack*, 265 Mich. App. 122, 127-28, 695 N.W.2d 342 (2005) (on sentencing for multiple concurrent convictions, scoring of the sentencing guidelines is appropriate for the highest class felony).  Any such claim thus lacks merit and does not warrant habeas relief.

variables and the prior record variables of the Michigan sentencing guidelines is not cognizable on habeas review because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Alleged errors in scoring the offense and prior record variables and determining the sentencing guideline range do not warrant federal habeas relief. Habeas relief is not warranted on these claims.

Petitioner further asserts that trial counsel was ineffective for failing to challenge the scoring of the sentencing guidelines, namely OV 6 and OV 12 and PRV 2 and PRV 7 (counsel objected to the scoring of OV 3). Petitioner, however, fails to show that the guidelines were incorrectly scored and/or that any corrected scoring would change his sentences. For example, Michigan law directs a trial court to assess OV 6 at 25 points for "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder." MICH. COMP. LAWS § 77.22(1). Petitioner was convicted of assault with intent to

commit murder.  Consequently, the record shows that OV 6 was properly scored.

OV 12 considers felonious criminal acts that were contemporaneous with the sentencing offense, and 25 points are assessed when "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed."  MICH. COMP. LAWS § 777.42(1)(a).  A felonious criminal act is contemporaneous if the act occurred within 24 hours of the sentencing offense, and will not result in a separate conviction.   MICH. COMP. LAWS § 777.42(2)(a). The record before the Court does not indicate whether the trial court scored 25 points for OV 12 or any such basis for doing so.  Nonetheless, even if a score of 25 points was erroneous as Petitioner alleges, he fails to show that a correction of that scoring would have affected his sentences.  As noted, conclusory allegations are insufficient to justify habeas relief.

PRV 2 is scored for "prior low severity felony convictions," and allows a maximum score of 30 points if the defendant has "4 or more prior low severity felony convictions."  MICH. COMP. LAWS § 777.52.  Michigan Department of Corrections' records reveal that Petitioner has past convictions for unarmed robbery, two separate incidents of unlawfully driving away an automobile, assault with a dangerous weapon, and felony firearm.  *See* Petitioner's Offender Profile, http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=207830. Petitioner asserts that PRV 2 was improperly scored at 30 points because he

completed the two unlawfully driving away an automobile sentences in 1994. Those convictions, however, still count in the scoring of PRV 2 because Petitioner did not have a 10-year gap between his discharge from those sentences in 1994 and the commission of his assault with a dangerous weapon and felony firearm offenses in 1997. *See* MICH. COMP. LAWS § 777.50. PRV was thus properly scored at 30 points.

PRV 7 is scored at 20 points if a defendant has two or more subsequent or concurrent felony convictions, MICH. COMP. LAWS § 777.57(1)(a). Multiple felony counts are scored, but a felony firearm conviction is not scored for PRV 7. MICH. COMP. LAWS § 777.57(2). Petitioner was convicted of assault with intent to murder, assault with intent to commit great bodily harm less than murder, and felon in possession of a firearm (as well as felony firearm). PRV 7 was thus properly scored at 20 points.

Petitioner thus fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct as required under *Strickland, supra*. As discussed *supra*, trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or request. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Habeas relief is not warranted on this claim.

### 5.     Double Jeopardy (Habeas Claim V)

Petitioner next asserts that he is entitled to habeas relief because his

convictions and sentences for felon in possession and felony firearm violate double jeopardy principles.  Respondent contends that this claim lacks merit.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The Double Jeopardy Clause provides three basic protections:  "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature ..., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of

cumulative punishments if the state legislature clearly intends to impose them."
*Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, ... a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In determining whether the Michigan legislature intended to authorize separate, cumulative punishments under the circumstances presented, the court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments." *Brimmage*, 793 F.2d at 1015; *see also Hunter*, 459 U.S. at 368. Whether punishments imposed are constitutional is essentially a question of legislative intent, and a state court's determination that a state legislature intended multiple punishments is binding on habeas review. *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

In this case, the Michigan Court of Appeals denied relief on this claim because Petitioner's argument was rejected by the Michigan Supreme Court in *People v. Calloway*, 469 Mich. 448, 452, 671 N.W.2d 733 (2003). *Cistrunk*, 2010 WL 2836349 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Michigan's felony

firearm statute provides:

> A person who carries or has in his or her possession a firearm when
> he or she commits or attempts to commit a felony, except a violation
> of section 223 [unlawful sale of a firearm], section 227 [carrying a
> concealed weapon], 227a [unlawful possession of a firearm by a
> licensee] or 230 [alternation of identifying marks on a firearm], is
> guilty of a felony, and shall be imprisoned for 2 years.

MICH. COMP. LAWS § 750.227b(1). The Michigan Supreme Court, in light of the

language of this section and the legislative history, has concluded that "the

Legislature's intent in drafting the felony-firearm statute was to provide for an

additional felony charge and sentence whenever a person possessing a firearm

committed a felony other than those four explicitly enumerated in the

felony-firearm statute." *People v. Mitchell*, 456 Mich. 693, 698, 575 N.W.2d 283

(Mich. 1998). In *Calloway*, the Michigan Supreme Court followed *Mitchell* and

specifically ruled that "[b]ecause the felon in possession charge is not one of the

felony exceptions in the statute, it is clear that defendant could constitutionally be

given cumulative punishments when charged and convicted of both felon in

possession, MCL § 750.224f, and felony-firearm, MCL § 750.227b." *Calloway*,

469 Mich. at 452.

 The Michigan courts have thus concluded that convictions and sentences

for felon in possession and felony firearm do not violate double jeopardy.

Because this determination is binding on federal habeas review, *see generally*

*Bradshaw*, 546 U.S. at 76, Petitioner's double jeopardy claim lacks merit. *See*

*White v. Howes*, 586 F.3d 1025, 1032-33 (6th Cir. 2009) (imposition of multiple

punishments for Michigan felon in possession and felony firearm convictions do

not violate double jeopardy); *Rodgers v. Bock*, 49 F. App'x 596, 597 (6th Cir.

2002) (same).

Furthermore, even if this court were free to independently determine

whether the Michigan legislature intended to authorize separate punishments

under the circumstances presented here, the result would be the same. The

Michigan Legislature intended to impose multiple punishments for the offenses of

felon in possession of a firearm and possession of a firearm during the

commission of a felony such that Petitioner's convictions for both of those

offenses do not violate double jeopardy protections. Habeas relief is not

warranted on this claim.

> **6.** **Photographic Arrays, Identifications, & Effectiveness of Trial Counsel (Habeas Claim VI)**

Petitioner next asserts that he is entitled to habeas relief because he was

denied his right to counsel/counsel of choice at photographic arrays conducted

with the victims after his arrest and those arrays were unduly suggestive and

tainted the victims' in-court identifications. He relatedly asserts that trial counsel

was ineffective for failing to request an evidentiary hearing on the matter. The

record indicates that the police conducted two photographic arrays after Petitioner's arrest – one for each shooting victim. The police officer who conducted the arrays testified that a defense attorney was present at the array for Floyd, but not at the array for Paris. *See* 03/10/09 Trial Tr., p. 171. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

The state trial court considered this claim, in part, on collateral review for plain error and denied relief. The court found that a defense attorney was present at the array for Paris and ruled that Petitioner was not entitled to have counsel of choice present in order to satisfy constitutional requirements. *Cistrunk*, No. 08-18426-01 at *4-5.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof, but, to the extent that the trial court did not fully address this issue (or was mistaken about the facts), the Court shall conduct a de novo review.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment, however, does not grant a defendant the right to counsel at a photographic array conducted by the government for the purpose of allowing a witness to attempt the identification of the offender, even when the array is

conducted after an arrest, or after an indictment or charges have been returned. *United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v. Jones*, 475 F.3d 292, 311 (6th Cir. 2007); *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000).[2] Thus, the mere fact that Petitioner's counsel of choice or counsel in general was not present during the photographic arrays does not render the witnesses' identifications and subsequent testimony unconstitutional as a matter of federal law.

Furthermore, a criminal defendant has no federal constitutional right to a live or corporeal lineup. *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (citing cases); *accord Morris v. Giurbino*, 162 F. App'x 769, 771 (9th Cir. 2006) ("The United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup."); *Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980). Petitioner thus fails to establish a violation of his federal constitutional rights as to this issue.

Additionally, Petitioner fails to show that the photographic arrays were unduly suggestive or that they tainted the victims' in-court identifications. Due

---

[2]Michigan law provides that a photographic identification in the absence of counsel when a defendant is in custody, absent exigent circumstance, is inappropriate. *See People v. Kurylczyk*, 443 Mich. 289, 302, 505 N.W.2d 528 (1993). Whether Petitioner had a right to counsel under state law is irrelevant, however, because "federal habeas corpus relief does not lie for errors of state law." *Lewis*, 497 U.S. at 780; *see also Estelle*, 502 U.S. at 68.

process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). There is a two-step procedure for determine whether an identification can be admitted consistent with due process. The first step is to determine whether the identification procedure was impermissibly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). The Supreme Court has stated that the risk of misidentification from a photo array increases where (1) "the police display to the witness only the picture of a single individual who generally resembles the person he saw;" (2) the police show the witness "the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized;" or (3) "the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In sum, an identification based on a photo pack is unduly suggestive if the circumstances "steer[ ] the witness to one suspect or another, independent of the witness's honest recollection." *Williams v. Lavigne*, 209 F. App'x 506, 510 (6th Cir. 2006) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001)).

If the procedure was impermissibly suggestive, the second step is to determine whether the identification nonetheless has sufficient indicia of reliability considering all the circumstances. *Ledbetter*, 35 F.3d at 1070-71. Five

considerations bear on the reliability of an identification: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a habeas petitioner meets this burden of proof that the burden shifts to the state to prove that the identification was reliable. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

In this case, Petitioner fails to show that the photographic arrays were unduly suggestive. Rather, the record indicates that the police officer used a computer-generated photographic array of multiple men, that the array included people with features similar to Petitioner's appearance, and that he presented the arrays to the shooting victims without suggesting who they should pick or that the suspect was included in the array. *See* 3/10/19 Trial Tr., pp. 166-70. Even if the photographs in the arrays differed in some ways from the victims' descriptions, it does not mean that the arrays were unduly suggestive. Such variations go to the weight, not the admissibility, of an identification. Petitioner also fails to establish

that the men depicted in the arrays differed significantly from each other.

The record also indicates that the victims' in-court identifications were reliable. Paris testified that he was familiar with Petitioner, that Petitioner had pulled up to his neighbor's house and asked him a question before the shooting, and that he got a good look at Petitioner when he approached him and stood a few feet away. *See* 3/10/09 Trial Tr., pp. 5-8. Floyd testified that he saw Petitioner earlier that day, that Petitioner came within a few feet of him, and that he clearly saw Petitioner's face. *Id*. at pp. 85-86. Petitioner fails to show that the pre-trial identification procedures were unduly suggestive and/or that the victims' in-court identifications were unreliable. Habeas relief is not warranted on this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to request an evidentiary hearing on the pre-trial identification procedures. Given the Court's decision that the foregoing claims lack merit, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct as required under *Strickland, supra*. As noted, trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or request. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Habeas relief is not warranted on such a claim.

### 7. Police Investigation (Habeas Claim VII)

Petitioner next asserts that he is entitled to habeas relief because the police

failed to obtain or preserve potentially exculpatory evidence. Respondent

contends that this claim lacks merit. The state courts did not address the merits of

this issue on direct appeal or collateral review. Accordingly, the Court's review

of the claim is de novo.

The failure of the police to preserve potentially useful evidence for a

defendant is not a denial of due process of law unless the defendant can show bad

faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988);

*see also Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam). When the state

fails to preserve evidentiary material "of which no more can be said than that it

could have been subjected to tests, the results of which might have exonerated the

defendant," a defendant must show: (1) that the government acted in bad faith in

failing to preserve the evidence; (2) that the exculpatory value of the evidence was

apparent before its destruction; and (3) that the nature of the evidence was such

that the defendant would be unable to obtain comparable evidence by other means.

*Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir. 2002).

A habeas petitioner has the burden to establish that the police acted in bad

faith in failing to preserve potentially exculpatory evidence. *Malcum v. Burt,* 276

F. Supp. 2d 664, 683 (E.D. Mich. 2003). The mere fact that the police had control

over evidence and failed to preserve it is insufficient, by itself, to establish bad

faith, nor will bad faith be found in the government's negligent failure to preserve

potentially exculpatory evidence. *Id.* "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56. Further, "where the government is negligent, even grossly negligent,

in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied." *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001).

In this case, Petitioner fails to show that the police acted in bad faith by failing to obtain or preserve evidence. The mere fact that the police may have been negligent – or even grossly negligent – in investigating the crime is insufficient to show that the police acted in bad faith. Additionally, Petitioner cites no clearly established law that the police or prosecution had a constitutional obligation to recover evidence from the crime scene, to interview additional witnesses, or to conduct testing of any evidence. *See generally Ridder v. City of Springfield*, 108 F.3d 1377, 1997 WL 117024, *2 (6th Cir. 1997) (dismissing civil rights claim where plaintiff failed to demonstrate what clearly established law created a duty for a police officer to conduct an alibi investigation in a particular manner). In fact, case law holds that once the police have sufficient probable cause to arrest, they need not investigate further. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 308 (6th Cir. 2005) (citing cases). Even under state

law principles, neither the police nor the prosecutor have an affirmative duty to investigate on a defendant's behalf, or to seek and find exculpatory evidence. *See People v. Burwick*, 450 Mich. 281, 537 N.W.2d 813, 816 n. 10 (Mich. 1995); *People v. Sawyer*, 222 Mich. App. 1, 564 N.W.2d 62, 65 (1997). Petitioner fails to establish that the police investigation deprived him of a fundamentally fair trial. He also fails to present any new exculpatory evidence in support of his allegations. Habeas relief is not warranted on this claim.

### 8. Conduct of the Prosecutor (Habeas Claims VIII & XVI)

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by improperly questioning defense witnesses about Petitioner's alibi and by arguing facts not in evidence during closing argument. Respondent contends that these claims lack merit.

As previously discussed, prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger*, 295 U.S. at 88. To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643; *see also Darden*, 477 U.S. at 181 (citing *Donnelly*); *Parker*, 567 U.S. at 45 (confirming that *Donnelly/Darden* is the proper standard).

Petitioner first asserts that the prosecutor improperly questioned defense

witnesses by suggesting that they colluded with Petitioner to establish his alibi.
While it is inappropriate for a prosecutor to make personal attacks on a defendant
or witnesses, a prosecutor may highlight inconsistencies or inadequacies in the
defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of
evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678,
686 (6th Cir. 2005). Moreover, a prosecutor may argue from the facts that a
witness is (or is not) worthy of belief. *Portuondo v. Agard*, 529 U.S. 61, 69
(2000); *Cristini v. McKee,* 526 F.3d 888, 902 (6th Cir. 2008). Such was the case
here. The prosecutor's questions and comments arose from the trial testimony and
the prosecutor argued from the facts that the defense witnesses were not credible.
Such arguments were proper and were not personal attacks on Petitioner or his
witnesses. *See Portuondo*, 529 U.S. at 69. Petitioner fails to show that the
prosecutor's conduct was improper or, more importantly, that it rendered his trial
fundamentally unfair.

Petitioner also asserts that the prosecutor improperly argued facts not in
evidence by referencing Anthony Robinson during closing argument. It is
well-settled that a prosecutor may not misstate the evidence or assume the
existence of prejudicial facts not in evidence. *Donnelly*, 416 U.S. at 646; *Darden*,
477 U.S. at 182; *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005). In this
case, the record indicates that the prosecutor was attempting to discuss the merits

of the testimony from Petitioner's brother Henry Brown, but mis-spoke and referenced Anthony Robinson, Petitioner's other brother. *See* 3/10/09 Trial Tr., pp. 191-202; 3/11/09 Trial Tr., p. 119. Petitioner fails to show that the prosecutor's brief reference to the wrong brother was intentional, that it mislead or confused the jury, or that it was otherwise so egregious as to deprive him of a fundamentally fair trial. Habeas relief is not warranted on these claims.

### 9. Right to Testify & Waiver of Right (Habeas Claim IX)

Petitioner next asserts that he is entitled to habeas relief because he was denied his right to testify on his own behalf and did not properly waive that right. Respondent contends that this claim is untimely and that it lacks merit. The state courts did not address the merits of this claim on direct appeal or collateral review. Accordingly, the Court's review of the claim is de novo.

It is well-established that a criminal defendant has a constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997). However, "a 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary ... to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the

claim.'" *McCoy v. Bock*, No. 01-10052, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003) (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2d Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)).  As the Sixth Circuit has explained:

> Indeed, '[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.'  To the contrary:
>
>> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel.  At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009) (citations omitted) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)).

In this case, Petitioner makes only a bald assertion that trial counsel precluded him from testifying at trial.  He does not present any evidence, other than his own assertions, which shows that he was misled or believed he was not allowed to testify.  "[D]efense counsel's role is to advise the defendant whether or

not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *Webber*, 208 F.3d at 550-51. As noted, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. If the defendant fails to do so, waiver is presumed. *Id*. at 551. Petitioner did not attempt to testify at trial nor notify the court of his desire to do so. Waiver of the right to testify is therefore presumed – and Petitioner fails to rebut that presumption. Habeas relief is thus not warranted on this claim.

## 10. Sufficiency of the Evidence (Habeas Claim X)

Petitioner also asserts that he is entitled to habeas relief because the prosecutor failed to present sufficient evidence to support his convictions. In particular, he alleges that the prosecutor failed to prove his identity as the perpetrator and failed to show that he acted with the requisite intent to support his assault with intent to commit murder and his assault with intent to commit great bodily harm less than murder convictions. Respondent contends that this claim lacks merit. The state courts did not address the merits of this claim on direct appeal or collateral review. Accordingly, the Court's review is de novo.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). A habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id.*

Under Michigan law, the elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder. *See Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law); *People v. Ericksen*, 288 Mich. App. 192, 195, 793 N.W.2d 120 (2010); MICH. COMP. LAWS § 750.83. The elements of assault with intent to commit great bodily harm less than murder are: "(1) an assault, *i.e*., an attempt or offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v. Bailey*, 451 Mich. 657, 668-69, 549 N.W.2d 325 (1996); MICH. COMP. LAWS § 750.84. The Michigan courts have defined the intent to do great bodily harm as "an intent to do serious injury of an aggravated nature." *People v. Mitchell*, 149 Mich. App. 36, 39, 385 N.W.2d 717 (1986). An intent to harm the victim can be inferred from the defendant's conduct. *People v. Parcha*, 227 Mich. App. 236, 239, 575 N.W.2d 316 (1997). The elements of felon in possession are: (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *People v. Perkins*, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004), *aff 'd* 473 Mich. 626, 703 N.W.2d 448 (2005); MICH. COMP. LAWS § 750.224f. The elements of felony firearm are:

(1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); MICH. COMP. LAWS § 750.227b.

As with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offenses. *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753 (2008); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409, and intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

The testimony of the shooting victims provided sufficient evidence to establish that Petitioner committed the crimes of which he was convicted. Paris testified that Petitioner drove up to his neighbor's house in a Dodge Charger, spoke to him, and said he would return. Floyd arrived a few minutes later and Petitioner returned in his Charger. Paris felt something hot against his leg, turned,

and saw shots coming from the Charger. He jumped into the backseat of his nearby car. Petitioner walked up to the car, leaned into the driver's seat and shot Floyd multiple times. Petitioner then pointed the gun back at Paris and shot him twice, once in the neck and once in the arm. *See* 3/10/09 Trial Tr., pp. 6-16. Floyd testified that he saw Petitioner earlier that day, that Petitioner pulled up in the same Charger prior to the shooting, that Petitioner approached him as he sat in Paris' car, and that Petitioner leaned into the car and shot him, striking him in the neck and causing partial paralysis in his right arm. *Id.* at pp. 84-91. Such testimony, and reasonable inferences therefrom, establish that Petitioner was the person who shot the victims and that he acted with the requisite intent to support his convictions. To be sure, a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).

Petitioner challenges the credibility determinations and inferences the jury drew from the testimony presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos*, 565 U.S. at 7; *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict was reasonable. The evidence presented at the trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the shootings and that he acted with the requisite intent to support his convictions. Habeas relief is not warranted on this claim.

**11.    Effectiveness of Trial Counsel (Habeas Claims XII & XV)**

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the police investigation, for failing to properly cross-examine the victims, for failing to seek an evidentiary hearing on the identification procedures, for failing to challenge the photographic array, for stipulating to the admission of a photograph of Petitioner's Dodge Charger (rather than requiring a jury view of the car), for failing to have scientific evidence made part of the record, for stipulating to the admission of various reports and photographs and waiving police witnesses' appearances at trial, for failing to have police evidence tested by an expert, for failing to challenge the police failure to test the victims for gunpowder residue or discover evidence of a shootout, for failing to object to the prosecutor's alleged misconduct, and for failing to move for a directed verdict due to lack of sufficient evidence. Respondent contends that these claims lack merit.

As previously discussed, the Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel at trial. To establish that trial counsel was ineffective, a habeas petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. A reviewing court's scrutiny of counsel's performance is highly deferential and there is a strong presumption that trial counsel exercised reasonable professional judgment. *Id.* at 689-90; *see also Harrington*, 562 U.S. at 105. A habeas petitioner is only entitled to relief if he or she can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Several of Petitioner's claims concern trial counsel's performance with respect to the other substantive claims raised in his petition, such as the police investigation, the identification procedures, the photographic array, the conduct of the prosecutor, and the sufficiency of the evidence. Given the Court's determination that those underlying claims lack merit, however, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct as required under *Strickland, supra*. As noted, trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or request. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Habeas relief is therefore not

warranted on such claims.

As to Petitioner's additional claims of ineffective assistance of trial counsel, he fails to provide factual support for his allegations. Petitioner merely lists his additional claims and does not explain with any specificity what evidence counsel would have uncovered with further investigation, how such evidence would have benefitted his defense, how testing of any additional materials would have provided exculpatory evidence, how he was actually prejudiced by counsel's conduct (beyond mere speculation), and/or how he was deprived of a substantial defense. As discussed *supra*, conclusory allegations are insufficient to warrant a grant of federal habeas relief. *Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771 (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington*, 455 F.3d at 733 (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Moreover, the record indicates that trial counsel challenged the prosecution's case, presented Petitioner's alibi witnesses, and made reasonable arguments in support of the defense theory. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

## 12. Effectiveness of Appellate Counsel (Habeas Claims XIV & XVII)

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective. He essentially argues that appellate counsel failed to raise his collateral review issues on direct appeal. Respondent contends that this claim lacks merit.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687.

It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective

appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

In this case, Petitioner cannot establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct in failing to raise his collateral review issues on direct appeal given this Court's determination that those underlying claims lack merit. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Moreover, the record indicates that appellate counsel raised substantial issues concerning judicial bias, the admission of other acts evidence, the effectiveness of trial counsel, and double jeopardy, on direct appeal. Petitioner fails to show that his other issues were clearly stronger or "dead bang" winners. He thus fails to establish that appellate counsel was ineffective. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner's habeas claims

lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from the Court's decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal. This case is **CLOSED**.

**IT IS SO ORDERED**.


                                        S/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:   1/23/2020